St. Mary's Church, Burlington, *v.* Samuel W. Stockton.

Specific performance, at the instance of a vendor, will not be decreed, unless his ability to make a title which will secure to the purchaser the full enjoyment of the property, free from embrrrassment, be unquestionable.

Where the purpose to which the money arising from the sale of lands by a trustee is required to be applied is of a definite and limited nature, it seems, that the purchaser is bound to see to the proper application of the purchase money.

Liquidated damages.

On the 25th of January, 1709, by a grant from Queen Anne, reciting that it will tend to the welfare of any people, and will be conducive to the establishment of the true religion, and the promotion of piety and virtue, that all possible encouragement be given for the erecting and building of convenient places for the preaching of the word of God and administration of the Holy Sacraments, according to the doctrine and liturgy of the Church of England, and, also, that a sufficient maintenance be provided for an Orthodox clergyman to live and reside amongst them; and reciting that the "Rev. Mr. John Talbot, minister of the Church of St. Mary's, in our town of Burlington," Daniel Coxe, (and others, naming them,) have, by their petition to Col. Richard Ingoldesby, our Lieutenant Governor and Commander-in-Chief of our Province of New Jersey, desired that they might have our Royal grant and charter enabling them to act as a Body Corporate by the name of the Minister, Church Wardens and Vestrymen of St. Mary, in Burlington; and that they might have power to receive gifts, to purchase lands and houses, to make leases, and to make such rules and orders for the disposal of their Church's affairs as will be agreeable to the laws and constitutions of our Kingdom of Great Britain: the said Queen willed, ordained, constituted, appointed and granted, that the Rev. Mr. John Talbot, Master of Arts, and the minister of our town of Burlington for the time being, Robert Wheeler and George Willis, Church Wardens of our said Church, and the

two Church Wardens for the time being, Col. Daniel Coxe, Lieut. Col. Hugh Huddy, two of our Council for our said Province, Jeremiah Bass, Esq., our Secretary of our said Province, Alexander Griffith, Esq., our Attorney-General, Thomas Revell, (and others, naming them,) and their successors to be elected in manner as is hereafter directed, be, and forever hereafter shall be one body politique and corporate, in deed and in name, by the name of the Minister, Church Wardens and Vestrymen of the Church of St. Mary, in Burlington, and them and their successors, by the same name,  We do by these presents, for us, our heirs and successors, make, ordain, constitute and declare one body politique and corporate, in deed and in name, to have community and succession perpetual, and that they and their successors, by that name, shall and may forever hereafter be persons able and capable in the law to purchase, have, take, receive and enjoy, to them and their successors, messuages, lands, tenements, rents, liberties, privileges, jurisdictions, franchises and other hereditaments whatsoever, in fee and perpetuity, not to exceed the yearly value of £300 sterling per annum ; and also estates for lives or years, and all goods, chattels and things whatsoever, for the better support and maintenance of an Orthodox minister in the said Church and the promotion of piety and religion, and likewise the maintaining and keeping in good repair the fabrick of the said Church, and providing decent ornaments for the same ; as also full power to give, grant, bargain, sell and dispose of any of the said lands, either for term of years or in fee : Provided always, that such and so many lands of the full value of such as are sold be *bona fide* purchased and settled for the uses aforesaid ; and it gives to the said persons, and their successors forever, that, on Monday in Easter week, yearly, at some convenient place to be by them appointed, of which notice shall be given by the minister on Easter day, between the hours of eight and twelve in the morning, to elect and choose, by majority of voices, two Church Wardens, and so many Vestrymen as shall be wanting to complete the number of twelve Vestrymen besides the two Church Wardens, out of the most substantial communicants of and in the said Church. It

33

gives power to constitute, ordain and make any constitutions, laws, ordinances and statutes, not contrary to the laws of the kingdom of Great Britain and the present constitutions of the Church of England, and to make leases for their lives or 21 years, and also bargains, sales or grants in fee, upon the proviso aforesaid. And that "our letters patents, or the inrolment thereof, shall be good, firm, valid and effectual in the law, according to "our Royal intentions herein before declared." "In witness whereof we have caused these our letters to be made patents, and our seal of our said Province of New Jersey to be hereunto affixed. Witness our trusty, &c., Richard Ingoldesby, Esq., our Lieut. Governor and Commander-in-Chief in and over our said provinces of New Jersey and New York and all the territories and tracts of land depending thereon in America, and Vice Admiral of the same, &c., at Burlington, in our said Province of New Jersey, the twenty-fifth day of January, in the eighth year of our reign, Anno Dom., 1709.

"J. BASS, Secretary."

On the 29th Oct., 1712, John Tatham, of New York, and Mary his wife, by an indenture between them, of the one part, and "his Excellency Robert Hunter, Esq., Captain-General and Governor in Chief of the provinces of New York and New Jersey and the territories depending on them in America, &c., and one of the members of the Right Honourable the Society for the Propagation of the Gospel in foreign parts, of the other part, for and in consideration of the sum of £600 sterling to him the said John paid by the said Robert Hunter, granted, bargained, sold, enfeoffed, assigned and confirmed unto the said Robert Hunter, his heirs and assignees forever, all that certain tract of land at Burlington upon Delaware River, (describing it,) containing about fifteen acres; also all that lot called a water lot, (describing it); also a certain piece of meadow land, (describing it,) containing about ten acres; also, all that other two acres of meadow land, (describing it,) containing about two acres; together with the large mansion house upon the first mentioned tract of land, and other the houses, outhouses, &c.: To Have and to Hold unto the said Robert Hunter, his heirs

and assigns forever, to and for the sole and only proper use, benefit and behoof of the Right Honourable the Society for the Propagation of the Gospel in foreign parts, and of their successors and assigns forever, and to no other use or uses whatsoever.

On the 13th of April, 1803, by an Indenture between "The Society for the Propagation of the Gospel in foreign parts," of the one part, and the Minister, Church Wardens and Vestrymen of Saint Mary's Church, in the City of Burlington, in the State of New Jersey, of the other part, reciting, that the said party of the first part are seized in fee simple of the lots of land therein described (being the lots of land conveyed, as aforesaid, to Robert Hunter for their use); and that the lands and premises were originally designed by the said society for the support and maintenance of the Episcopal Church in the said city of Burlington; but, since the separation of the Colonies from the Kingdom of Great Britain, have for the most part laid open and unproductive either to the said Society or to the said Episcopal Church; and that the Minister, Church Wardens and Vestrymen of the said Church have earnestly requested of the said Society to grant and convey the said premises to and for the use and maintenance of the said Episcopal Church in the city of Burlington; the said Society for the Propagation of the Gospel in foreign parts, for and in consideration of the request aforesaid and of five shillings to the said society paid by the said Minister, Church Wardens and Vestrymen, did, " according to their estate and interest in the premises, and so far as they lawfully can or may, but not further or otherwise," grant, bargain, sell, enfeoff, &c., to the said Minister, Church Wardens and Vestrymen, and their successors and assigns, All, &c.: To Have and to Hold unto the said Minister, Church Wardens and Vestrymen, their successors and assigns forever, for the use and maintenance of the Episcopal Church in the city of Burlington aforesaid, and to and for no other use or uses whatsoever.    And the said society for the propagation, &c., did by the said Indenture covenant and agree, to and with the said Minister, Church Wardens and Vestrymen, their successors and assigns, that they the said Minister, &c., their successors and assigns, should and

might, at all times thereafter, have, hold, occupy, possess and enjoy the said premises, and the rents, issues, profits and commodities thereof, without the let, suit, &c., of the said society for the propagation, &c., or their successors, or of any other person or persons whatsoever, anything having or lawfully claiming by, from or under them or any of them; " but it is hereby declared, agreed and understood, that nothing herein contained shall extend or be construed to extend to any warranty by the said society of the title or possession of or to the said premises herein conveyed or any part thereof." " In testimony whereof the said Society for the Propagation of the Gospel in foreign parts have hereunto affixed their corporate seal, at the palace of his Grace the Lord Arch-Bishop of Canterbury, situate at Lambeth, in the County of Surrey, in England, the day and year first above written."

On the 15th of September, 1847, an agreement was entered into therein stated to be " between the Minister, Church Wardens and Vestrymen of St. Mary's Church, of the city of Burlington, in the State of New Jersey, party of the first part, and Samuel Wesley Stockton, of the city of Philadelphia, party of the second part," witnessing, that the said party of the first part, for the consideration of $18,000, to be paid as thereinafter mentioned, covenanted and agreed with the said Stockton, his heirs and assigns, that the said party of the first part should and would, on or before Oct. 2d of said year, grant and convey to the said Stockton, his heirs and assigns, all that certain lot of ground (describing it); also all that lot (describing it); which comprises all the right, title and interest of the said party of the first part in and to the ground within the above boundaries, excepting, nevertheless, to the owners of lots conveyed by the said party of the first part to Benjamin Shepherd and others the free use and privilege of fifteen feet wide alley running eastwardly from St. Mary's street towards Tatham street, as laid out on a map made some years ago by the said party of the first part; and the aforesaid premises to be free and clear of all incumbrance; the said Stockton, on the execution of said deed, to pay $3,000 and give his bonds and warrants and mortgages

for the balance, &c., and that said Stockton, for himself, &c., promised and agreed with the said party of the first part, their successors and assigns, that on the execution of the deed as aforesaid he would pay the said $3,000 and give his bonds and mortgages as aforesaid, and also agreed to let the purchasers of lots No. 1, 2, 3 and 4 on Pearl street, sold this day at auction, have them at the price sold for on the terms and conditions named at the sale. And, for the performance of said covenants and agreements on the part of either party, the said party of the first part bind themselves, and their successors in office, unto the other party and their heirs, in the sum of $5,000, which sum, it is hereby agreed between the parties, shall be the stipulated damages to be paid by the party delinquent, to the other performing his or their part of the agreement, and now hereby agreed, fixed upon and stipulated as a liquidated satisfaction to be made and paid in case of the breach of this agreement by either party to the other performing.

This agreement is signed by "G. W. Doane, Rector of St. Mary's Church," with a seal affixed to his name, having a device on it, and by the said Stockton, with his seal affixed.

An instrument is exhibited in the cause, dated September 30, 1847, "Between the Minister, Church Wardens and Vestrymen of St. Mary's Church, in the city of Burlington, in the State of New Jersey, party of the first part, and Samuel Wesley Stockton, of, &c., party of the second part," witnessing that the said the Minister, &c., in consideration of $18,000 to them paid by the said Stockton, have granted, bargained, sold, &c., and do grant, bargain, sell, &c., unto the said Stockton, his heirs and assigns, all those certain lots, &c., being parts of two lots of ground which the Society for the Propagation of the Gospel in foreign parts conveyed to the said Minister, Church Wardens and Vestrymen of Saint Mary's Church, aforesaid, in fee, by deed dated April 13, 1803, and recorded on the 20th September, following, in the Clerk's office of the County of Burlington, together with all the ways, waters and appurtenances thereunto belonging, and all the estate, right, title, interest, property, possession, claim and demand whatsoever of them the said Min-

ister, &c., in law, equity, or otherwise howsoever, of, in and to the same and every part thereof ; to Have and to Hold unto the said Samuel Wesley Stockton, his heirs and assigns forever. And the said Minister, &c., for themselves and their successors, do covenant and agree to and with, &c., that at the time of the sealing and delivering hereof they were seized in their own right of an absolute and undefeasible estate in fee simple, of and in the said premises, and have good right, full power, and sufficient authority in the law, to grant, bargain, sell and convey the same to the said Stockton, his heirs and assigns forever, according to the true intent and meaning of these presents ; and that it shall and may be lawful for the said Stockton, his heirs and assigns, at all times, hereafter, forever, peaceably and quietly to Have, Hold and enjoy the said premises, without the lawful let, suit, &c., of the said the Minister, &c., their successors or assigns, or of any other person or persons lawfully claiming or to claim the same ; and that the said the Minister, &c., all the said granted premises unto the said Stockton, his heirs and assigns, and against every person or persons lawfully claiming or to claim the same, will warrant and forever defend.

In witness whereof the said the Minister, Church Wardens and Vestrymen of St. Mary's Church, party hereto of the first part, by their President and Rector, George Washington Doane, hath hereunto set his hand and affixed the seal of said Corporation, the day and year first written.

(Signed)     G. W. Doane,

With the same seal as that affixed to the agreement.

Signed sealed and delivered ⎰
    in presence of    ⎱

Franklin Woolman.

The acknowledgement of the execution of the deed is as follows : On the 30th of September, 1847, before me Franklin Woolman, a Commissioner for taking the acknowledgment of deeds, personally appeared George W. Doane, known to me to be the President and Rector of the Minister, Church Wardens and Vestrymen of St. Mary's Church, in the city of Burlington, who, I being satisfied that the said " the Minister, Church Wardens and Vestry-

men of St. Mary's Church, in the city of Burlington," are the grantors named in the above Indenture, and the contents thereof having been by me first made known to him, acknowledged that he signed the said deed, caused the corporate seal of the said Corporation to be thereto affixed, and delivered the said deed as the voluntary act and deed of the said the Minister, Church Wardens and Vestrymen of St. Mary's Church, in the city of Burlington, by authority and in execution of a resolution of the Vestry of said Church or Corporation him thereunto lawfully empowered for the uses and purposes therein mentioned.

The only testimony in the case is, that Stockton did not attend at the time and place fixed for the delivery of the deed.

The bill is filed to compel a specific performance by him of the said agreement.

The defence set up by the answer is, that the complainants are not able to make a good title.

*P. D. Vroom* for the complainants.

*Browning* and *W. Halsted* for the defendant. They cited *Elm. Dig.* 80 *Pl.* 3; 2 *Black. Com.* 336; *Shelford on Mortmain and uses,* 59, 296, 7, in 37 *Law. Lib.* 296; 4 *Kent's Com.* 307; *Angel* & *Ames on Corp.* 87; 2 *Kent's Com.* 226; 3 *Pick. Rep.* 237, 8; 1 *Penn. Rep.* 49; 6 *Conn. Rep.* 304; *Story's Eq. Jur.* sec. 750 *et seq.*

THE CHANCELLOR. By a charter from Queen Anne, dated January 25, 1709, reciting, that, " the Rev. Mr. John Talbot, minister of the Church of St. Mary's, in our town of Burlington, Daniel Coxe, (and others, naming them,) have, by their petition, desired that they might have our Royal grant and charter enabling them to act as a body corporate by the name of the Minister, Church Wardens and Vestrymen of St. Mary, in Burlington," the said Queen willed, ordained, &c., " that the Reverend Mr. John Talbot, the minister of our town of Burlington for the time being, Robert Wheeler and George Willis, Church Wardens of our said Church, and the two Church War-

dens for the time being, Col. Daniel Coxe, (and others, naming them,) and their successors to be elected in manner as is hereafter directed, be, and forever hereafter shall be, one body politic and corporate, in deed and in name, by the name of the Minister, Church Wardens and Vestrymen of the Church of Saint Mary, in Burlington, and them and their successors, by the same name, we do by these presents, for us, our heirs and successors, make, ordain, &c., one body politic and corporate, to have community and succession perpetual, and that they and their successors, by that name shall and may forever hereafter, be capable to purchase, have, take, receive and enjoy, to them and their successors, messuages, lands, in fee and perpetuity, (&c.,) for the better support and maintenance of an Orthodox minister in the said Church, and the promotion of piety and religion, and likewise the maintaining and keeping in repair the fabric of the said Church, and providing decent ornaments for the same, as also full power to give, grant, bargain, sell and dispose of any of the said lands, either for term of years or in fee : Provided always that such and so many lands of the full value of such as are sold be *bona fide* purchased and settled for the uses aforesaid ;" and giving to the said persons, and their successors forever, the right, on notice, to elect and choose, by majority of voices, two Church Wardens, and so many Vestrymen as shall be wanting to complete the number of twelve Vestrymen, besides the two Church Wardens.

On the 29th October, 1712, John Tatham, of New York, and Mary his wife, by an Indenture between them, of the one part, and His Excellency Robert Hunter, Esq., Captain General and Governor in Chief of the Provinces of New York and New Jersey, and one of the members of the Right Honourable the Society for the Propagation of the Gospel in foreign parts, of the other part, conveyed to the said Robert Hunter, his heirs and assigns forever, certain lands at Burlington upon Delaware River, (describing them.)  To Have and to Hold unto the said Robert Hunter, his heirs and assigns forever, to and for the sole and only proper use, benefit and behalf of the Right Honourable the Society for the Propagation of the Gospel in foreign

parts, and of their successors and assigns forever, and to no other use or uses whatsoever.

On the 13th April, 1803, by an Indenture between the said "the Society for the Propagation of the Gospel in foreign parts," of the one part, and the Minister, Church Wardens and Vestrymen of Saint Mary's Church, in the city of Burlington, in the State of New Jersey, of the other part, reciting, that the said lands were originally designed by the said Society for the support and maintenance of the Episcopal Church in the said city of Burlington, but, since the separation of the Colonies from &c., have for the most part laid open, and unproductive, either to the said Society or to the said Episcopal Church; and that the Minister, Church Wardens and Vestrymen of the said Church have earnestly requested of the said Society to grant and convey the said lands to and for the use and maintenance of the said Episcopal Church in the city of Burlington, did, " according to their estate and interest in the premises, and so far as they lawfully can or may, but not further or otherwise," convey the said lands to the said Minister, Church Wardens and Vestrymen, and their successors and assigns. To Have and to Hold unto them, their successors and assigns forever, for the use and maintenance of the Episcopal Church, in the city of Burlington aforesaid, and to and for no other use or uses whatsoever.

On the 15th September, 1847, an instrument of writing, under seal, purporting to be an agreement between " the Minister, Church Wardens and Vestrymen of St. Mary's Church, of the city of Burlington, in the State of New Jersey, of the first part, and Samuel Wesley Stockton, of the second part, was executed, by which the said party of the first part agreed to convey to the said Stockton, his heirs and assigns, certain parts of the said lands, (describing the parts,) and then follows this clause in the agreement, " which comprises all the rihgt, title and interest of the said party of the first part in and to the ground within the above boundaries, excepting, nevertheless, to the owners of lots conveyed by the said party of the first part to Benjamin Shepherd and others the free use and privilege of a 15 feet alley way, running, &c. ;" the aforesaid premises to be free and clear

of all incumbrance; and the said Stockton agreed, that, on the execution of the deed as aforesaid, he would pay, &c.; and, for the performance of the said covenants and agreements, each party was, by the said instrument, bound to the other in the sum of $5,000; which sum it was thereby agreed should be the stipulated damages to be paid by the party delinquent to the other performing his or their part of the agreement; the said sum being hereby agreed, fixed upon and stipulated as a liquidated satisfaction to be made and paid, in case of the breach of the said agreement by either party, to the other performing. The agreement fixed a time and place for the delivery of the deed.

The manner in which this agreement was signed, and the nature and contents of the deed which was prepared as a fulfilment of the agreement on the part of the party thereto of the first part, and the manner in which the said deed was executed and acknowledged, will be found in the statement of the case given by the Reporter.

Stockton did not attend at the time and place fixed for the delivery of the deed. The bill is exhibited to compel a specific performance by him of the said agreement.

The defence set up by the answer is, that the complainants are not able to make a good title. And the principal point discussed on the argument of the case was, whether the complainants could make a good title.

The first ground taken by the Counsel of the defendant is, that the deed of April 13, 1803, from "The Society for the propagation of the Gospel in foreign parts," to "The Minister, Church Wardens and Vestrymen of Saint Mary's Church, in the city of Burlington," gives the land, not to the use of the said Minister, &c., of St. Mary's Church only, and, therefore, that the said Minister, &c., of St. Mary's Church are not, as contended by the Counsel of the complainant, both trustee and sole cestui que trust; but gives the land to the said Minister, &c., of St. Mary's Church, their successors and assigns forever, for the use and maintenance of the Episcopal Church in the city of Burlington, including, not merely the parish of St. Mary,

or the said Minister, &c., of St. Mary's Church, but all other Episcopal parishes or congregations that are, or may in time to come be established in the city of Burlington; and that, therefore, the defendant should not be compelled, with notice of this trust, derived from the title deed of the complainants, to take a deed for the lands from the complainants, under th said agreement between them and him.

This construction of the said deed strikes my mind with much force; and, without saying that it is indisputably correct, it might be sufficient, of itself, to induce a denial of the specific performance prayed by the complainants, on the ground, that a specific performance, at the instance of a vendor, will not be decreed, unless his ability to make a title which will secure to the purchaser the full enjoyment of the property, free from embarrassment, be unquestionable.

But there is another embarrassment to which the defendant would be subjected if he should be compelled to take a title from the complainants. The charter from Queen Anne to "The Minister, Church Wardens and Vestrymen of the Church of Saint Mary, in Burlington," limits the power to sell lands, therein given, by the proviso, that such and so many lands, of the full value of such as shall be sold, be *bona fide* purchased and settled for the uses declared in the said charter. Without examining particularly the doctrine as to the duty of purchasers to see to the application of the purchase money, and the distinctions which prevail on this subject, it is sufficient to say, that this proviso might be a serious embarrassment to a purchaser. He would be subjected to the issue of the question, whether the purpose to which the money arising from the sale is required to be applied be of a definite and limited, or of a general and unlimited nature. If the first, he would, as it seems from the authorities, be bound to see that the purchase money was applied to the purpose mentioned in the proviso. *Story's Eq. Jur.*, section 1127.

Again, by the agreement for sale and purchase, in this case, a certain sum is agreed, fixed upon and stipulated, as a liquidated satisfaction to be made and paid, in case of the breach of the

said agreement by either party to the other performing. The parties have fixed their own measure of damages for breach of the agreement; and, whether the sum, from its amount, $5,000, should be considered by this Court as liquidated damages or only in the nature of a penalty, which I have not now the means of determining, this provision of the agreement shows that each party contemplated a resort to an action at law for damages, in case of the failure of the other to perform on his part.

The relief prayed by the complainants is denied.

Order accordingly.